## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF OKLAHOMA

PEGGY L. MORRIS,                    )
                                    )
                Plaintiff,          )
                                    )
v.                                  )       Case No. CIV-14-378-RAW-KEW
                                    )
CAROLYN W. COLVIN, Acting           )
Commissioner of Social              )
Security Administration,            )
                                    )
                Defendant.          )

## REPORT AND RECOMMENDATION

Plaintiff Peggy L. Morris (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* <u>Williams v. Bowen</u>, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. <u>Casias v. Secretary of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951); *see also*, <u>Casias</u>, 933 F.2d at 800-01.

## Claimant's Background

Claimant was born on February 19, 1963 and was 50 years old at the time of the ALJ's decision. Claimant completed her education through the eighth grade. Claimant has worked in the past as a certified nurse's aide. Claimant alleges an inability to work beginning March 1, 2007 due to limitations resulting from pain in the head, shoulders, arms, hips, legs, and back.

## Procedural History

On July 11, 2011, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On June 6, 2013, an administrative hearing was held before Administrative Law Judge ("ALJ") James Bentley by video with the ALJ presiding in McAlester, Oklahoma and Claimant appearing in Fort Smith, Arkansas. On June 21, 2013, the ALJ issued an unfavorable decision on Claimant's application. The Appeals Council denied review of the decision on July 1, 2014. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she retained the RFC to perform less than a full range of light work.

## Error Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to identify all of Claimant's severe impairments; (2) reaching an improper RFC determination; and (3) making findings at step five

which were not supported by substantial evidence.

## Step Two Analysis

In his decision, the ALJ determined Claimant suffered from the severe impairments of Graves' disease by history, lumbar degenerative disc disease, bilateral hip pain, possible symptom magnification, COPD, hypertension, mild tremor, major depressive disorder, and generalized anxiety disorder. (Tr. 20). The ALJ also found Claimant retained the RFC to perform less than the full range of light work. In so doing, the ALJ determined Claimant could occasionally lift/carry 20 pounds and frequently lift/carry less than 10 pounds; could stand/walk for six hours in an eight hour workday and sit for six hours in an eight hour workday. Claimant was found to be able to perform frequent, but not constant, handling and fingering bilaterally; would need to avoid all exposure to fumes, dusts, odors, gases, and poor ventilation; required a sit/stand option with no more than one change every half hour and without leaving the work station. Claimant could follow simple tasks with some detail and could tolerate occasional contact with co-workers, supervisors, and the general public. (Tr. 23). After consultation with a vocational expert, the ALJ found Claimant retained the RFC to perform the representative jobs of small products assembler, hospital product assembler, and conveyer line

bakery worker. (Tr. 35). As a result, the ALJ found Claimant was not disabled from March 1, 2007 through June 30, 2012, the date last insured. Id.

Claimant contends the ALJ failed to identify all of her severe impairments. Where an ALJ finds at least one "severe" impairment, a failure to designate another impairment as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps considers the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. Brescia v. Astrue, 287 F. App'x 626, 628-629 (10th Cir. 2008). The failure to find that additional impairments are also severe is not cause for reversal so long as the ALJ, in determining Claimant's RFC, considers the effects "of all of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'" Id. quoting Hill v. Astrue, 289 F. App'x. 289, 291-292, (10th Cir. 2008).

Moreover, the burden of showing a severe impairment is "de minimis," yet "the mere presence of a condition is not sufficient to make a step-two [severity] showing." Flaherty v. Astrue, 515 F.3d 1067, 1070-71 (10th Cir. 2007) quoting Williamson v. Barnhart, 350 F.3d 1097, 1100 (10th Cir. 2003); Soc. Sec. R. 85-28. At step

two, Claimant bears the burden of showing the existence of an impairment or combination of impairments which "significantly limits [his] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). An impairment which warrants disability benefits is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(1)(D). The severity determination for an alleged impairment is based on medical evidence alone and "does not include consideration of such factors as age, education, and work experience." Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

Claimant first contends the ALJ's characterization of her Graves' disease as "by history" minimizes the severity of the condition. The use of the term "by history" does not alter the fact that the ALJ considered the condition to be a severe impairment and does not represent reversible error.

Claimant also asserts the ALJ erroneously failed to include her sleep disorder and fatigue as severe impairments. The ALJ considered these conditions when making his RFC evaluation. (Tr. 24-33). Since he did not deny benefits at step two based upon the lack of any severe impairments, the ALJ's failure to include these conditions does not constitute reversible error.

**RFC Determination**

Claimant contends the ALJ's RFC assessment was flawed since it (1) did not fully appreciate the limitations imposed by Claimant's Graves' disease; (2) understated the effect of Claimant's pain in her back, hips, and legs; (3) failed to consider a medical source statement sent to Defendant but not incorporated into the record by the ALJ; (4) failed to include the totality of Claimant's mental impairments; and (5) failed to properly assess Claimant's credibility. Claimant states the ALJ should have attributed her weight loss, anxiety, memory loss, difficulty sleeping, fatigue, and tremors to her Graves' disease. Instead, the ALJ found Claimant's weight loss was due to diet, exercise, and prescription medication. (Tr. 25). The ALJ also cited to the objective record concerning the status of Claimant's thyroid problems, including the various levels of thyroid hormones and successful treatment. (Tr. 24-25). The ALJ attributes many of Claimant's continuing problems with this condition upon her declining of radioactive iodine therapy treatment. (Tr. 25).

The record does indicate Claimant sought treatment to assist her in weight loss from Dr. Jackson. She did not significantly drop her weight to a dangerously low level. Indeed, while Claimant contends Dr. Jackson ordered thyroid testing based, in part, upon

this weight loss, Dr. Jackson's somewhat illegible notes appear to indicate that the thyroid testing was ordered due to swelling in the throat and fatigue. (Tr. 316). This Court attributes no error to the ALJ's failure to attribute Claimant's weight loss to her Graves' disease.

Claimant also contends the ALJ should have included limitations in his RFC for fatigue, sleep difficulties, and a tremor due to her Graves' disease. The ALJ states Claimant refused treatment for her condition and appears to base his diminished consideration of the effects of her Graves' disease upon this refusal. The regulations provide that benefits will be denied a claimant who fails without good reason to follow treatment prescribed by his physician if it can restore her ability to work. See 20 C.F.R. § 404.1530. "Courts reviewing whether a claimant's failure to undertake treatment will preclude the recovery of disability benefits have considered four elements, each of which must be supported by substantial evidence: (1) the treatment at issue should be expected to restore the claimant's ability to work; (2) the treatment must have been prescribed; (3) the treatment must have been refused; (4) the refusal must have been without justifiable excuse." <u>Teter v. Heckler</u>, 775 F.2d 1104, 1107 (10th Cir. 1985) citing <u>Jones v. Heckler</u>, 702 F.2d 950, 953 (11th Cir.

1983); Cassiday v. Schweiker, 663 F.2d 745, 749 (7th Cir. 1981);
Schena v. Secretary, 635 F.2d 15, 19 (1st Cir. 1980). The ALJ
failed to proceed through this analysis before rejecting the
symptoms of her condition as impairing her ability to work. To the
extent the ALJ contended that Claimant's complaints of fatigue and
sleep difficulties were never correlated to her thyroid problems,
the medical record contradicts this contention. Dr. Jackson
clearly ordered thyroid testing based, at least in part, upon these
symptoms. On remand, the ALJ shall consider these impairments in
his RFC assessment or proffer the required analysis for their
rejection.

Claimant also contends the ALJ failed to consider the extent
of her back, hip, and leg pain in his RFC assessment. The ALJ
found Claimant's reports to treating physicians as well as medical
testing did not reveal "intractable, disabling pain." (Tr. 26).
Dr. Traci Carney found on September 17, 2011 that Claimant
possessed full grip strength, no point tenderness, no edema, intact
gross and find tactile manipulation, no sensory or motor deficits,
a safe and stable gait with appropriate speed, normal heel/toe
walking and tandem gait was normal. (Tr. 340). Dr. Jackson made
similar observations. (Tr. 314-16, 320-25, 378-079, 411, 413).
Additionally, Dr. John Harp, an orthopedist, found Claimant's hip

x-rays to be unremarkable with an MRI showing only a possible paralabral cyst on the left hip. Testing was essentially normal except for Claimant's complaints of pain. (Tr. 233-34). This raised the issue of "possible symptom magnification" by Dr. Harp because the objective testing was not consistent with her stated symptoms. (Tr. 234). He noted Claimant was using over-the-counter pain medication. Id. The ALJ did not err in his evaluation of Claimant's back, hip, and leg pain as it was consistent with the medical record. Dr. Harp's conclusions also offer support for the ALJ's evaluation of Claimant's credibility. This Court finds no error in the credibility assessment.

Claimant also asserts that Dr. Jackson's medical source statement was not included in the record or considered by the ALJ despite being offered to Defendant. This Court does not know and it is not revealed in the briefing of the circumstances behind this apparent omission from the record. Since the case is being remanded on other grounds, the ALJ shall insure the medical source statement is included in the record and considered in his decision, unless so other unknown circumstance precludes its consideration.

Claimant also contends the ALJ failed to properly assess her mental impairments. Claimant was evaluated by Dr. Theresa Horton on September 20, 2011. Dr. Horton concluded Claimant suffered from

generalized anxiety disorder; and major depressive disorder, recurrent, moderate to severe. (Tr. 349). She found Claimant had significant problems with concentration which may affect her ability to stay on task for periods of two hours. The poor concentration was also found to affect her level of successful productivity. Id.

The ALJ gave Dr. Horton's report "great weight in part and little weight in part." He found parts of the report "overly speculative and inconsistent" with other evidence. (Tr. 30). An ALJ "is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." Haga v. Astrue, 482 F.3d 1205, 1208 (10th Cir. 2007). The ALJ's analysis of Dr. Horton's opinion reflects this prohibited practice. On remand, the ALJ shall refrain from rejecting only those portions of the report which do not support a finding of disability without the proper analysis.

## Step Five Analysis

Claimant's final argument contends the questioning of the vocational expert was flawed since it did not include all of Claimant's physical and mental limitations. Since this Court has directed a re-evaluation of the ALJ's RFC assessment, the hypothetical questioning of the vocational expert will be

reformulated to mirror the RFC found by the ALJ on remand.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 9th day of September, 2015.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE